

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ezekiel Frederick,

              Plaintiff,

        –v–

Capital One Bank (USA), N.A. et al.,

             Defendants.

SEP 1 7 2015

14-CV-5460 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

    *Pro se* Plaintiff Ezekiel Frederick filed this action against numerous Defendants asserting

thirty-six claims related to allegedly fraudulent credit reporting practices and resulting injury to

his credit score.  Thirteen Defendants filed nine motions to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Plaintiff opposed three of the motions to dismiss and filed cross-

motions for judgment on the pleadings under Rule 12(f) and summary judgment under Rule 56.

For the reasons set forth below, Defendants' motions are granted in part and denied in part and

Plaintiff's motions are denied.

## I.    BACKGROUND

    Plaintiff's essential allegation is that Defendants are engaged in a conspiracy to report

false information to credit reporting agencies and threaten him with injury to his credit score if

he does not pay allegedly invalid debts. Sec. Am. Comp. at 8-10.  As a result of the decrease in

his credit score attributable to this scheme, Plaintiff cannot obtain financing to purchase real

estate.  *Id*. at 33-35.  Plaintiff further alleges that Defendants targeted him for these practices

based on his race.  *Id.* at 8.  Plaintiff claims violations of the Fair Housing Act ("FHA"); the

Equal Credit Opportunity Act ("ECOA"); the Fair Debt Collection Practices Act ("FDCPA"); the

Fair Credit Reporting Act ("FCRA"); various civil rights statutes including 42 U.S.C. §§ 1981, 1982, 1985, 1986, and 2000d; the Racketeer Influenced and Corruption Organization Act ("RICO"), and various related New York laws.

This is not the first such action Plaintiff has filed.  On at least three prior occasions, Plaintiff raised substantially similar allegations against a variety of different defendants.  *See Frederick v. Wells Fargo Home Mortg.*, No. 13-cv-7364, 2015 WL 1506394, at *1 (E.D.N.Y. March 30, 2015) (detailing Plaintiff's history of similar allegations).  At least two of his federal district court cases were dismissed in their entirety for failure to state a claim for relief.  *See id.*, at *1, *18.

## II.   LEGAL STANDARD

Although Plaintiff only opposed three of the nine motions to dismiss, "failure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint."  *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (citing *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)).  On the contrary, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law."  *Id.* (quoting *McCall*, 232 F.3d at 322).

At the Rule 12(b)(6) stage, *pro se* pleadings are read liberally and interpreted "to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Insufficient are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

For the purpose of evaluating a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all factual allegations in the complaint, and draw[s] all reasonable inferences in the plaintiff's favor." *Barrows v. Burwell*, 777 F.3d 106, 111 (2d Cir. 2015). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.   DISCUSSION

Defendants Capital One Bank (USA) N.A. ("Capital One") and David Ginzburg; Anderson Financial Network Inc. ("AFNI") and Ronald Greene; Diversified Consultants Inc. ("Diversified") and Charlotte Zehnder; Midland Credit Management, Inc. ("Midland"); Pinnacle Credit Services, LLC ("Pinnacle") and Tina Vincelli;, Experian Information Solutions, Inc. ("Experian"); TransUnion LLC ("TransUnion"); IC System Inc. ("ICS"); and the Fair Isaac Corporation ("FICO") (collectively, the "moving Defendants") filed motions to dismiss the Plaintiff's Second Amended Complaint.  Pinnacle and Tina Vincelli moved to dismiss all claims but the FDCPA claim, *see* Pinnacle Br. at 1, while the remaining Defendants sought dismissal of the action in its entirety.  The Court will address each of the Plaintiff's causes of action in turn.

### A.   The Fair Housing Act

Section 3604(a) of the FHA makes it illegal "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).  Defendants argue that they have not refused to sell or rent housing to Plaintiff and are thus not liable under the FHA.   Plaintiff argues that the Defendants'

extortionate credit reporting scheme injured his credit score and, as a result, "otherwise [made] unavailable" to him a variety of housing opportunities. Sec. Am. Comp. at 35-37. In support of this broad reading of "otherwise make unavailable," Plaintiff correctly notes that courts are required to give "generous construction" to the Fair Housing Act. *See Hack v. President & Fellows of Yale College*, 237 F.3d 81, 87 (2d Cir. 2000) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 211-12 (1972)). He further analogizes to a line of cases holding that the racially discriminatory denial of property insurance "otherwise make[s] unavailable" housing within the meaning of the FHA. *See, e.g., Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 441-42 (S.D.N.Y. 2002) (citing *McDiarmid v. Econ. Fire & Cas. Co.*, 604 F. Supp. 105, 107 (S.D. Ohio 1984)).

Despite Plaintiff's attempt to analogize the denial of property insurance to credit reporting practices, property insurance is intrinsically related to real estate transactions in a way that credit reporting practices are not. The relationship between the challenged practice and real estate transactions is essential because the FHA prohibits discrimination in the "sale or rental" of housing. § 3604(a). As Defendants point out in their briefs, adopting Plaintiff's argument that any injury to one's credit score "otherwise make[s] unavailable" housing within the meaning of the FHA would make credit reporting disputes potential FHA violations regardless of the subject matter of the underlying transaction. *See* Capital One Reply Br. at 5-6. For example, Plaintiff's claim in the instant action against Consolidated Edison ("ConEd") stems from a dispute over a utilities account. *See* Sec. Am. Comp. at 14-16. A dispute over a utilities account is too far removed from the purchase or rental of housing to fall within the ambit of the FHA, even if the dispute affects one's credit score and thus one's ability to obtain housing. Such a broad

construction of the FHA is not supported by the text, which primarily concerns the "sale or rental" of housing, nor has it been adopted by any other court.

The Court's conclusion that credit reporting practices do not fall within the ambit of the FHA is strengthened by the availability of more apt federal statutory schemes. Specifically, FCRA prohibits abusive credit reporting practices, the FDCPA prohibits abusive debt collection practices, the ECOA prohibits discrimination "with respect to any aspect of a credit transaction," and 42 U.S.C. § 1981 generally prohibits discrimination with regard to contracts. These statutes more closely track Plaintiff's allegations.

Because credit reporting practices as alleged in the complaint are not subject to the FHA, Plaintiff fails to state a claim to relief under the FHA that is plausible on its face, so those claims must be dismissed as to all moving Defendants.

**B.      Equal Credit Opportunity Act and New York Executive Law § 296-a[1]**

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race." 15 U.S.C. § 1691(a)(1). Federal regulations have interpreted "credit transaction" to include "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including . . . [the] furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures)." 12 C.F.R. § 202.2(m). New York Executive Law § 296-a is "the state counterpart to the ECOA" and makes it illegal for "any creditor" to "discriminate in the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit, on the basis of race." *See* § 296-a(1)(b); *see also Germain v. M & T Bank Corp.*, No. 13-CV-7273 (KMK), 2015 WL 3825198, at *11 (S.D.N.Y.

---

[1] Although Plaintiff's Second Amended Complaint seeks relief under New York Executive Law § 297, it appears that Plaintiff intends to invoke New York Executive Law § 296-a.

June 19, 2015).  Because these statutes are substantively similar, the court will consider them together.  *See Germain*, 2015 WL 3825198, at *11.

As an initial matter, by its terms the ECOA and § 296-a prohibit *creditors* from discriminating against loan applicants.  15 U.S.C. § 1691(a)(1); N.Y. Exec. Law § 296-a.  Under the ECOA, "creditor" means "any person who regularly extends, renews, or continues credit . . . or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  § 1691a(e).  Similarly, for the purposes of § 296-a, a "creditor" is "any person or financial institution . . . which extends credit or arranges for the extension of credit by others."  N.Y. Exec. Law § 292(22).  The only moving Defendant that Plaintiff alleges is a creditor under these definitions is Capital One.  Sec. Am. Comp. at 4-8.  Because the other Defendants are not creditors within the meaning of the ECOA and § 296-a, Plaintiff fails to state a plausible claim for relief against them under those statutes.

To the extent that Capital One is a creditor subject to the ECOA and § 296-a, Plaintiff may pursue a disparate treatment or disparate impact theory.  *See Jones v. Ford Motor Credit Co.*, 2002 WL 88431, at *3 (S.D.N.Y. Jan. 22, 2002).  Disparate impact claims in this context are evaluated under the Title VII *McDonnell Douglas* burden-shifting framework.  *See Germain*, 2015 WL 3825198, at *12.  The traditional prima facie ECOA claim under this framework requires proof that an applicant was  a member of a protected class, was qualified for and applied for a loan, was rejected, and that the entity issuing the loan showed preference for non-protected parties.  *See id.* at 16.  Because the traditional prima facie case requires rejection of an application for credit, Capital One argues that it cannot be held liable for practices not involving the origination of loans.  *See* Capital One Br. at 14.  However, the ECOA does not merely cover the outright rejection of loans.  Courts have long held that the ECOA bans discrimination as to

6

the terms of loans. *See M&T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 574-75 (E.D.N.Y. 2010) (providing less favorable loan terms on basis of race is a violation of the ECOA). Similarly, federal regulations make clear that the ECOA covers the "furnishing of credit information," as well as "collection procedures," by creditors. *See* 12 C.F.R. § 202.2(m). Section 296-a has similarly broad language prohibiting discrimination in "the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit, on the basis of race." N.Y. Exec. Law § 296-a. Capital One's credit reporting practices after default concern the furnishing of credit information, collection procedures, and the terms and conditions of credit, making those practices subject to the ECOA and § 296-a.

The Second Circuit recently addressed the pleading standard in disparate treatment cases in *Littlejohn v. City of New York*, 795 F.3d 297, 310-11 (2d Cir. 2015). Relying on *Iqbal*, the Second Circuit held that a plaintiff in a disparate treatment case must plead facts providing "at least minimal support for the proposition that the [challenged activity] was motivated by discriminatory intent." *Id.*, at 311. The Second Circuit noted that this could be done by pointing to a defendant's use of "ethnically degrading terms" or racially "invidious comments," a defendant's "more favorable treatment of [individuals] not in the protected group," or something suspicious in the "sequence of events leading" to the challenged activity, among other things. *Id.* at 312.

Here, Plaintiff alleges that he was targeted for less favorable credit reporting practices based on the racial demographics of the neighborhood in which he lived. *See* Sec. Am. Comp. at 8. However, Plaintiff alleges no facts providing even "minimal support for the proposition that [the Defendants' activities] were motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Perhaps most pertinently, he does not allege any facts supporting an inference that other

individuals were treated more favorably than he was treated. Plaintiff's vague and conclusory allegations of disparate treatment thus fail to state a claim upon which relief can be granted.

For a disparate impact ECOA claim, Plaintiff must demonstrate that a creditor's facially neutral lending practices "have a proportionally greater negative impact on minority populations." *M & T Mortgage Corp. v. White*, 736 F. Supp. 2d 538, 574 (E.D.N.Y. 2010). Plaintiff pleads no facts supporting an inference that Defendants' lending practices are facially neutral but have a disparate impact on race. He does, however, "offer[] to procure and provide statistical evidence of disparate impact" after discovery of "detailed information within the possession and control" of the Defendants. Sec. Am. Comp. at 3-4. Plaintiff's "speculation that discovery would reveal facts to support claims 'underscores, rather than cures, the deficiency in the [c]omplaint'" as to the disparate impact claim. *Frederick v. Walls Fargo Home Mortg.*, 2015 WL 1506394 (quoting S. *Cherry St. LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 113–14 (2d Cir. 2009)).

As a result, the ECOA and § 296-a claims against all moving Defendants must be dismissed.

## C. Fair Debt Collection Practices Act and New York Fair Debt Collection Practices Act[2]

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692(e). The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Importantly, the FDCPA governs only debt collectors; "creditors are not subject to the

---

[2] Although Plaintiff's Second Amended Complaint seeks relief under the "New York Consumer Collection Practices Act", it appears that Plaintiff intends to invoke New York Fair Debt Collection Practices Act.

FDCPA." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998); see 15

U.S.C. § 1692a(6)(F) (excluding from the definition of "debt collector" "any person collecting or

attempting to collect any debt owed or due or asserted to be owed or due another to the extent

such activity . . . concerns a debt which was originated by such person").

 All moving Defendants except Pinnacle and Tina Vincelli moved to dismiss Plaintiff's

FDCPA claims.[3]  Plaintiff's factual allegations support a reasonable inference that Defendants

AFNI, Diversified, Midland, and ICS are debt collectors.  *See* Sec. Am. Comp. at 4-8, 24-26, 28.

Because the other moving Defendants (Capital One and David Ginzburg, Experian, TransUnion,

FICO) are not "debt collectors" within the meaning of the FDCPA, Plaintiff fails to state a

plausible claim for relief against them under that statute.

 As to the alleged debt collectors AFNI, Diversified, Midland, and ICS, the statute of

limitations poses a problem.  An FDCPA claim must be brought "within one year from the date

on which the violation occurs." 15 U.S.C. § 1692k(d).  Plaintiff added these four Defendants to

the instant action on September 10, 2014, *see* Dkt. No. 15, but alleges wrongdoing ending no

later than August 2013. *See* Sec. Am. Comp. at 24-26, 28.  Because Plaintiff's FDCPA claims

against AFNI, Diversified, Midland, and ICS were filed more than a year after Plaintiff alleges

the FDCPA violation occurred, *see* 15 U.S.C. § 1692k(d), Plaintiff does not state a plausible

claim to relief against them.

 Unlike the FDCPA, which governs only debt collectors, the New York Fair Debt

Collection Practices Act (the "NYFDCPA") provides that a "principal creditor" may not

"disclose . . . information affecting the debtor's reputation for credit worthiness with knowledge

or reason to know that the information is false." N.Y. Gen. Bus. Law § 601(3).  The

---

[3] Because Pinnacle and Tina Vincelli did not move to dismiss the FDCPA claim, the Court will not consider the
sufficiency of those allegations.

NYFDCPA's definition of "principal creditor" includes "any person . . . or organization to whom a consumer claim is owed . . . or any assignee for value of said person . . . or organization." *Id.* § 600. As a result, this statute applies to both creditors and debt collectors, who are assignees of creditors. As noted above, Plaintiff's factual allegations support a reasonable inference that Defendants Capital One, Pinnacle, AFNI, Diversified, Midland, and ICS are either creditors or debt collectors. *See* Sec. Am. Comp. at 4-8, 21, 24-26, 28. Plaintiff's core allegation is that these Defendants knowingly submitted false information to credit reporting agencies in violation of the NYFDCPA. Specifically, Plaintiff alleges that these Defendants knowingly reported inaccurate delinquency dates with regard to certain enumerated loans. *See* Sec. Am. Comp. at 16, 22, 24, 26-28. Based on these allegations, Plaintiff states a plausible claim for relief as to Capital One, Pinnacle, AFNI, Diversified, Midland, and ICS under the NYFDCPA.

However, Plaintiff does not allege that David Ginzburg, Tina Vincelli, Ronald Greene or Charlotte Zehnder, the Chief Executive Officers of several of the Defendant businesses, were personally involved in reporting inaccurate delinquency dates. As a result, the NYFDCPA claims against them, as well as the remaining moving Defendants (Experian, TransUnion, and FICO), must be dismissed for failure to state a claim.

### D. Fair Credit Reporting Act

FCRA "is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant and up-to-date information in a confidential and responsible manner." *Neblett v. Chase Bank*, No. 09 CIV 10574 (DAB), 2010 WL 3766762, at *4 (S.D.N.Y. Sept. 27, 2010) (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). Both furnishers of

information and credit reporting agencies can be liable under different provisions of FCRA.  The

Court will address these two types of liability in turn.

### 1.      Liability of furnishers of information

"As part of [its] regulatory scheme, [FCRA] imposes several duties on those who furnish

information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148,

150 (2d Cir. 2012) (citing 15 U.S.C. § 1681s–2).   Section 1681s-2(b) imposes certain duties on

furnishers of information "[a]fter receiving notice . . . of a dispute with regard to the

completeness or accuracy of any information . . . [from] a consumer reporting agency." §

1681s–2(b)(1).   At a minimum, § 1681s-2(b) requires furnishers to "conduct an investigation

with respect to the disputed information," "report the results of the investigation to the consumer

reporting agency," and modify or delete inaccurate information.   § 1681s-2(b)(1)(A), (C), (E).

Plaintiff alleges sufficient facts to support a reasonable inference that Defendants Capital

One, Pinnacle, AFNI, Diversified, Midland, and ICS are "furnishers of information" within the

meaning of § 1681s-2(b).   *See* Sec. Am. Comp. at 23-27, 29, 32 (pointing to instances where

Defendants filed reports with credit reporting agencies).   Because Plaintiff does not allege that

FICO is a furnisher of information, he fails to state a plausible claim to relief against the

company under FCRA and that claim must be dismissed.

As to the remaining Defendants, section 1681s-2(b) only applies if "the furnisher of

information received notice of the consumer dispute from a credit agency." *Neblett*, 2010 WL

3766762, at *5 (collecting cases).   Plaintiff alleges that he filed "intervention" letters with

various credit report agencies against Defendants Capital One, Pinnacle, AFNI, Midland, and

ICS, but not against Diversified. *See* Sec. Am. Comp. at 18, 23, 25-29, 31-32.   Plaintiff further

alleges that there is an Automated Consumer Dispute Verification system (ACDV) in place that

11

automatically relays complaints filed with credit reporting agencies to furnishers of information. Sec. Am. Comp. at 30-31. Accepting these factual allegations as true for the purposes of this 12(b)(6) motion, *see Barrows v. Burwell*, 777 F.3d 106, 111 (2d Cir. 2015), Plaintiff has plausibly alleged that Defendants Capital One, Pinnacle, AFNI, Midland, and ICS, but not Diversified, received notice of the consumer dispute from a credit agency.[4] Because Plaintiff further alleges that inaccurate information remained on his credit report despite disputing those items, *see* Sec. Am. Comp. at 17, 22, 26, 28, he states a plausible claim to relief under FCRA as to Defendants Capital One, Pinnacle, AFNI, Midland, and ICS. However, Plaintiff fails to state a plausible claim to relief under FCRA against Diversified so that claim must be dismissed.

Furthermore, Plaintiff does not allege that Defendants David Ginzburg, Tina Vincelli, Ronald Greene, or Charlotte Zehnder, the Chief Executive Officers of several of the Defendant businesses, personally received notice of a consumer dispute from a credit agency. As a result, Plaintiff fails to state a plausible claim to relief under FCRA against them and those claims must be dismissed. *See Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 306-07 (E.D.N.Y. 2014) (dismissing FCRA claim where plaintiff did not allege CEO had received notice of the dispute).

## 2.    Liability of credit reporting agencies

Plaintiff also alleges that Defendants TransUnion and Experian violated FCRA. "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (internal citations omitted). As a general matter, FRCA "require[s] consumer reporting agencies to insure that the reported information is accurate, and

---

[4] Credit reporting agencies have a statutory obligation to provide furnishers of information with notice of any consumer disputes they receive. *See* 15 U.S.C. § 1681i(a)(2)(A). This enhances the plausibility of Plaintiff's allegation that the credit reporting agencies provided notification of Plaintiff's dispute to Defendants.

to investigate disputes as to the accuracy of reported information." *Nguyen v. Ridgewood Sav. Bank*, 2015 WL 2354308, at *9 (E.D.N.Y. May 15, 2015).

Section 1681e of FCRA provides that "consumer reporting agenc[ies] . . . shall follow reasonable procedures to assure maximum possible accuracy" of a consumer's credit report.  15 U.S.C. § 1681e(b).  Section 1681i provides that a credit reporting agency must "conduct a reasonable reinvestigation" when "the completeness or accuracy of any item of information contained in the consumer's file . . . is disputed by the consumer." § 1681i (a)(1)(A). Importantly, even if some information in a consumer credit report is inaccurate, "a credit reporting agency is not held strictly liable under the FCRA merely for reporting it." *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760 (PAE), 2013 WL 1430467, at *6 (S.D.N.Y. Apr. 8, 2013) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). Instead, sections 1681n and 1681o provide that credit reporting agencies are liable only for willful or negligent violations of the statute.  §§ 1681n(a); 1681o(a).  As a result, "the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." *Ogbon*, 2013 WL 1430467, at *6.

In describing his FCRA claim against the credit reporting agencies, Plaintiff merely recites the elements of the statute, alleging in a conclusory fashion that the Defendants failed to "follow reasonable procedures" and failed to "adequately investigate . . . Plaintiff's challenges." Sec. Am. Comp. at 31.  Because Plaintiff "fail[s] to make any allegations regarding . . . the procedures followed . . . by Trans Union . . . or Experian in response to [his] complaints," *see Nguyen v*, 2015 WL 2354308, at *11, his "[t]hreadbare recitals of the elements" do not state a plausible claim for relief and must be dismissed. *Iqbal*, 556 U.S. at 678.

### E.    Civil Rights Statutes

Plaintiff alleges claims under a number of federal civil rights statutes, including sections 1981, 1982, 1985, 1986, and 2000d of Title 42.  The Court will address each of these statutes in turn.

#### 1.  Section 1981

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  At least one court has held that credit reporting practices after default on a loan concern the enforcement of the credit contract within the meaning of § 1981.  *See Hickson v. Home Fed. of Atlanta*, 805 F. Supp. 1567, 1572 (N.D. Ga. 1992) *aff'd*, 14 F.3d 59 (11th Cir. 1994).  This Court agrees.  Although several of the Defendants are debt collectors rather than originating creditors, this theory of contract liability applies equally to them insofar as they, as assignees of the rights of the creditors, are entitled to enforce the underlying contract.  *See Saint John Marine Co. v. United States*, 92 F.3d 39, 47 (2d Cir. 1996) (citing the Restatement (Second) of Contracts § 317(1) (1979)).

As with ECOA claims, disparate treatment claims under § 1981 are "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*."  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  As noted in the ECOA discussion above, "what must be plausibly supported by facts alleged in the complaint" in a disparate treatment case is "at least minimal support for the proposition that the [challenge activity] was motivated by discriminatory intent."  *Id.* at 311.  For the same reasons that Plaintiff fails to state a disparate treatment ECOA claim, he fails to state a plausible §1981 claim under a disparate treatment

theory as to any of the moving Defendants.  Because "§ 1981 reaches only purposeful discrimination," *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982), Plaintiff cannot rely on a disparate impact theory to state a claim under that statute.  As a result, Plaintiff's § 1981 claims must be dismissed as to all moving Defendants.

### 2.  Section 1982

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  Plaintiff alleges that the Defendants' racially discriminatory practices have injured his credit score and thereby made it more difficult for him to acquire real property in violation of § 1982.

The Court can find no authority adopting Plaintiff's proposed interpretation of § 1982.  As noted in the FHA discussion above, credit reporting does not involve the sale or rental of property.  Credit reporting practices, even if racially discriminatory, do not constitute a violation of § 1982 because they are too far removed from the resulting impediment to property rights caused by a low credit score.  Instead, such injury is within the purview of FCRA, the FDCPA, the ECOA, and § 1981.  Because § 1982 does not apply to Plaintiff's allegations, Plaintiff fails to state a plausible claim to relief under that statute as to all moving Defendants.

### 3.  Sections 1985 and 1986

Section 1985 provides that a plaintiff may recover damages arising from a conspiracy to violate his civil rights.  42 U.S.C. § 1985.  Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (internal

quotation marks omitted).  To demonstrate a § 1985 conspiracy, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted).

Plaintiff provides no factual basis supporting a reasonable inference that Defendants "entered into an agreement, express or tacit, to achieve the unlawful end." *Webb*, 340 F.3d at 110.  Although Plaintiff does allege some communication between several of the Defendants, that communication involves routine credit reporting activities between creditors, debt collectors, and credit reporting agencies, *see* Sec. Am. Comp. at 31-32, and does not plausibly establish a conspiracy.  Plaintiff's "claim[] of conspiracy . . . [is] vague and provide[s] no basis in fact," and as a result must be dismissed as to all moving Defendants. *Van Dunk v. St. Lawrence*, 604 F.Supp.2d 654, 663 (S.D.N.Y. 2009).  "[B]ecause a § 1986 claim must be predicated on a valid § 1985 claim," the § 1986 must also be dismissed as to all moving Defendants. *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

### 4.  Section 2000d

Section 2000d prohibits the discriminatory exclusion of individuals from participation in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Because Plaintiff has not alleged that Defendants receive any federal funding and further has not alleged exclusion from "any program or activity receiving Federal financial assistance," he has failed to state a plausible claim to relief under § 2000d and those claims must be dismissed as to all moving Defendants.

### F.    RICO and RICO Conspiracy

The purpose of RICO is to "eliminat[e] . . . the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S. Rep. No. 91–617, at 76 (1969)). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Bell v. Hubbert*, No. 95-CV-10456 (RWS), 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)).

In order to maintain a civil RICO claim, Plaintiff must first "plead the existence of [a RICO] enterprise." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 22 (2d Cir. 1983). A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As the Supreme Court has explained, a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" evidenced "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In evaluating an enterprise, the Second Circuit has instructed courts to look at the "hierarchy, organization, and activities" of the alleged enterprise. *First Capital Asset Mgmt. Inc., v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).

Plaintiff alleges a "strong-arm association-in-fact RICO enterprise," which he describes as a "national umbrella organization" in which Defendants are the "active board of managers." Sec. Am. Comp. at 41. It is true that the businesses of some of the Defendants are interrelated insofar as creditors regularly furnish information to credit reporting agencies. However,

17

Plaintiff fails to provide factual support for an inference that the thirteen moving Defendants "associated together for a common purpose" of executing the extortionate scheme Plaintiff ascribes to them. There is no factual basis for an inference that the Defendant businesses were members of an "ongoing organization . . . function[ing] as a continuing unit." Plaintiff's vague and conclusory allegations that the Defendants constitute a "strong-arm association-in-fact RICO enterprise" are insufficient to state a plausible claim to relief under RICO and thus must be dismissed as to all moving Defendants.

### G.   New York state law fraud claims

Plaintiff brings claims alleging fraud, constructive fraud, fraudulent misrepresentation, fraudulent inducement, and fraudulent concealment against Defendants in connection with their allegedly fraudulent credit reporting practices. *See* Sec. Am. Comp. at 15-17, 20, 22, 24. Specifically, Plaintiff alleges that Defendants "electronically file[d] . . . fatally flawed and unverifiable monthly reports with the [credit reporting agency] Defendants . . . that fraudulently . . . represented Defendant's . . . statutory right to collection [and fraudulently] represented Plaintiff['s] . . . delinquency date." *Id.* at 22. In his Opposition Brief, Plaintiff emphasizes that his fraud claims concern "how each credit report statement was fraudulent." Opp. Br. at 19.

Section 1681t(b)(1)(F) of FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State [] with respect to any subject matter regulated under . . . [] section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Accordingly, "[a]llegations of false [credit] reporting" are preempted by FCRA. *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011). Because Plaintiff's fraud allegations concern false credit reporting,

Plaintiff cannot allege a plausible claim to relief and his state law fraud claims must be dismissed as to all moving Defendants.

**H.    Other New York state law claims**

Plaintiff raises a number of other New York state law claims, including deceptive business practices, negligent representation, civil conspiracy, aiding and abetting, and attorney ethical violations.  The Court will address each of these in turn.

**1.  Deceptive Business practices**

New York General Business Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business . . . are hereby declared unlawful."  In order to fall within § 349, the challenged practices "must have a broad impact on consumers at large; [p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute."  *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)) (internal quotation marks omitted).

Other than Plaintiff's conclusory allegation that Defendants' credit reporting and debt collecting practices caused injury to "similarly situate[d] and protected others," *see, e.g.*, Sec. Am. Comp. at 17, 22, 24, Plaintiff's Second Amended Complaint fails to allege any facts supporting a reasonable inference that the Defendants' alleged practices "have a broad impact on consumers at large" as opposed to being a "[p]rivate . . . dispute[] unique to the parties." *New York Univ.*, 87 N.Y.2d at 320.  Because Plaintiff alleges no facts from which a reasonable inference can be drawn that Defendants' practices impact consumers at large, or indeed a single consumer other than himself, he does not state a plausible claim to relief and his § 349 claim must be dismissed as to all moving Defendants.

**2.  Negligent Representation**

Under New York law, "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v Stavitsky*, 8 N.Y.3d 144, 148 (2007). Plaintiff alleges that Defendants provided inaccurate information in his credit report in an extortionate scheme. *See* Sec. Am. Comp. at 9. Plaintiff further alleges that he filed numerous letters disputing the accuracy of this information. *See id.* at 18, 23, 27, 29. The fact that Plaintiff disputed the inaccurate information in his credit report demonstrates that he did not reasonably rely on that information. As a result, Plaintiff cannot make out a plausible claim to relief on the ground of negligent representation and those claims must be dismissed as to all moving Defendants.

### 3. Civil conspiracy

To establish a claim of civil conspiracy under New York law, Plaintiff must demonstrate the existing of an underlying tort in addition to "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a common purpose or plan; and, (4) resulting damage or injury." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 386 (S.D.N.Y. 2010). Put otherwise, Plaintiff must allege facts which "support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose." *Id.* (quoting *Snyder v. Puente De Brooklyn Realty Corp.*, 746 N.Y.S.2d 517, 521 (N.Y. App. Div. 2002)). For the same reason that Plaintiff fails to identify a § 1985 conspiracy or a RICO enterprise, he fails to demonstrate a civil conspiracy. Plaintiff has not pled any facts supporting a reasonable inference that the Defendants "knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious

purpose." *See id.* Instead, he relies on "mere conclusory statements" of conspiracy. *Iqbal*, 556 U.S. at 678. As a result, Plaintiff's civil conspiracy claim is not plausible on its face and must be dismissed as to all moving Defendants.

### 4. Aiding and Abetting

"To establish liability for aiding and abetting . . . under New York law, the plaintiff[] must show (1) the existence of [an underlying crime]; (2) defendant's knowledge of the [underlying crime]; and (3) that the defendant provided substantial assistance to advance the [underlying crime's] commission." *Krys v. Pigott*, 749 F.3d 117, 125, 127 (2d Cir. 2014). New York courts have required plaintiffs to demonstrate actual knowledge, as opposed to constructive knowledge, of the underlying crime. *See Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (collecting cases).

Plaintiff broadly alleges that "each individual Defendant . . . aided, abetted, assisted, facilitated and otherwise participated in" the credit reporting and debt collecting scheme. *See* Sec. Am. Comp. at 11. This conclusory allegation of aiding and abetting does not provide any facts from which it can be reasonably inferred that Defendants had actual knowledge of the underlying criminal activity or "provided substantial assistance" to the commission of the underlying criminal activity.

With respect to the credit reporting agencies, Plaintiff is somewhat more specific on the substantial assistance point and alleges that these Defendants "assisted [the] scheme by refusing to adequately investigate" notices of dispute. Sec. Am. Comp. at 14. This theory of aiding and abetting, however, undercuts the element of actual knowledge: If the credit reporting agencies failed to adequately investigate notices of dispute, they lacked actual knowledge of the falsity of the reported information. Plaintiff pleads no facts to support an inference that the credit

reporting otherwise had knowledge of the underlying crime.  As a result, Plaintiff fails to state a plausible claim to relief concerning aiding and abetting claims under New York law and those claims must be dismissed as to all moving Defendants.

### 5.  New York Judiciary Law § 487

New York's statute governing the ethical conduct of attorneys prohibits "any deceit or collusion . . . with intent to deceive the court or any party."  N.Y. Jud. Law § 487.  This statute "applies to any oral or written statement *related to a proceeding* and communicated to a court or party with the intent to deceive." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008) (citing *Fields v. Turner*, 147 N.Y.S.2d 542, 544 (Sup. Ct. 1955)) (emphasis added).  Plaintiff alleges that Tina Vincelli and David Ginzburg are attorneys who participated in sending false information to credit reporting agencies. *See* Sec. Am. Comp. at 17, 29-30.  Because the alleged deceit predated the initiation of the lawsuit and is not "related to a [court] proceeding," Plaintiff fails to state a plausible claim to relief under § 487 with regard to Ms. Vincelli and Mr. Ginzburg.

### IV.   PLAINTIFF'S CROSS MOTIONS

In response to Defendants' motions to dismiss, Plaintiff filed cross-motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(f) and summary judgment under Federal Rule of Civil Procedure 56.  A motion for judgment on the pleadings may only be made "[a]fter the pleadings are closed."  Fed. R. Civ. P. 12(c).  With regard to summary judgment, "[a]lthough [Rule 56] allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading." *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173, 188-89 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 56 Advisory Committee Notes).  Because

Defendants have not yet filed an answer, the Court finds Plaintiff's motions for judgment on the pleadings and summary judgment to be premature and denies them.

## V.   CONCLUSION

For the foregoing reasons, Capital One's motion to dismiss is DENIED as to Plaintiff's FCRA and NYFDCPA claims and GRANTED as to all other claims, which are dismissed with prejudice; AFNI's motion to dismiss is DENIED as to Plaintiff's FCRA and NYFDCPA claims and GRANTED as to all other claims, which are dismissed with prejudice; Diversified's motion to dismiss is DENIED as to Plaintiff's NYFDCPA claim and GRANTED as to all other claims, which are dismissed with prejudice; Midland's motion to dismiss is DENIED as to Plaintiff's FCRA and NYFDCPA claims and GRANTED as to all other claims, which are dismissed with prejudice; Pinnacle's motion to dismiss is DENIED as to Plaintiff's FCRA and NYFDCPA claims and GRANTED as to all other claims, which are dismissed with prejudice with the exception of the FDCPA claim which Pinnacle did not move to dismiss; Experian's motion to dismiss is GRANTED and all claims against it are dismissed with prejudice; TransUnion's motion to dismiss is GRANTED and all claims against it are dismissed with prejudice; ICS's motion to dismiss is DENIED as to Plaintiff's FCRA and NYFDCPA claims and GRANTED as to all other claims which are dismissed with prejudice; FICO's motion to dismiss is GRANTED and all claims against it are dismissed with prejudice; Tina Vincelli's motion to dismiss is GRANTED and all claims against her are dismissed, with the exception of the FDCPA claim which Ms. Vincelli did not move to dismiss; David Ginzburg's motion to dismiss is GRANTED and all claims against him are dismissed with prejudice, Ronald Greene's motion to dismiss is GRANTED and all claims against him are dismissed with prejudice; and Charlotte Zehnder's motion to dismiss is GRANTED and all claims against her are dismissed with prejudice.

The Plaintiff's cross-motions are DENIED.

Thus, the following claims and Defendants remain in the case: the FDCPA claims against Pinnacle and Ms. Vincelli; the NYFDCPA claims against Capital One, Pinnacle, AFNI, Diversified, Midland, and ICS; and the FCRA claims against Capital One, Pinnacle, AFNI, Midland, and ICS.

The following Defendants did not move to dismiss: Verizon Wireless, Consolidated Edison, Equifax Inc., and J. Brandon Black.

This resolves Dkt. Nos. 25, 27, 32, 33, 34, 60, 63, 65, 68, 81, 86, and 93.


SO ORDERED.


Dated: September 17, 2015
       New York, New York

                                        _____
                                        ALISON J.  NATHAN
                                        United States District Judge