UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

Ezekiel Frederick,

        Plaintiff,

    —v—

Capital One Bank (USA), N.A. *et al.*,

        Defendants.

---

14-CV-5460 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

In 2014, *pro se* Plaintiff Ezekiel Frederick filed this action asserting thirty-six claims against myriad Defendants, all stemming from allegedly fraudulent credit reporting practices and the resulting injury to Plaintiff's credit score. The Court previously granted various motions to dismiss. *See Frederick v. Capital One Bank (USA) N.A.*, No. 14-CV-5460 (AJN), 2015 WL 5521769 (S.D.N.Y. Sept. 17, 2015) [hereafter, "MTD Order"]; *Frederick v. Capital One Bank (USA) N.A.*, No. 14-CV-5460 (AJN), 2015 WL 8484560 (S.D.N.Y. Dec. 8, 2015). As a result, only two of Plaintiff's causes of action remain.

The first cause of action is for purported violations of the Fair Credit Reporting Act ("FCRA") by all five remaining Defendants: Capital One Bank USA, N.A. ("Capital One"), Midland Credit Management, Inc. ("Midland"), Anderson Financial Network Inc. ("Anderson"), Pinnacle Credit Services, LLC ("Pinnacle")[1], and I C System Inc. The second cause of action is for an alleged violation of the Fair Debt Collections Practices Act ("FDCPA") by Pinnacle.

---

[1] Tina Vincelli, a former associate at Pinnacle's outside counsel, is also a named defendant, as addressed below.

Each of these Defendants, as well as Plaintiff, now moves this Court for summary judgment. Plaintiff also moves the Court to strike certain documents or affidavits submitted by the Defendants as part of their summary judgment practice.

For the reasons that follow, the Court GRANTS Defendants' motions for summary judgment and DENIES Plaintiff's motion for summary judgment and motion to strike.

## I. Background and Factual Summary

As the Court stated in its previous order, "Plaintiff's essential allegation is that Defendants are engaged in a conspiracy to report false information to credit reporting agencies and threaten him with injury to his credit score if he does not pay allegedly invalid debts." MTD Order at *1. He has made similar allegations before. *Id.* (citing the Plaintiff's prior actions).

As relevant here, at the motion to dismiss stage the Court held that two of Plaintiff's claims survived Defendants' motions. First, because Pinnacle and Tina Vincelli did not move to dismiss Plaintiff's Fair Debt Collection Practices Act claim, it remains. MTD Order at *5, n.3. Second, the Court held that Plaintiff plausibly stated a claim for relief under section 1681s-2(b) of the FCRA against Capital One, Pinnacle, Anderson, Midland, and I C System as "furnishers of information." *Id.* at *6.[2] Accordingly, the Court only summarizes those facts relevant to the remaining claims.

### A. Initial Note on the Submissions

As an initial matter, in light of the unconventional nature of Plaintiff's submissions, the Court finds it appropriate to define what materials it relied on in considering these motions and what constitutes a genuine dispute under the law.

---

[2] Initially the Court also held that Plaintiff had stated a plausible claim for relief under the New York Fair Debt Collection Practices Act ("NYFDCPA"), *id.* at *5, however, after controlling case law was brought to the Court's attention by Defendants' motion to amend the judgment, the Court dismissed the Plaintiff's NYFCDPA claims as well. *See Frederick*, 2015 WL 8484560 at *1.

When Defendants' moved for summary judgment, pursuant to Local Civil Rule 56.2, Plaintiff was provided a notice and a copy of both the Federal Rule of Civil Procedure governing such motions, and the corresponding Local Rule. *See, e.g.*, Dkt. No. 333. In this notice, Plaintiff was warned "[i]f you do not respond to the motion for summary judgment with affidavits and/or documents contradicting the material facts asserted by the defendant, the Court may accept defendant's facts as true. *Id.* at 2. Moreover, Federal Rule 56(e) states that "[i]f a party fails to properly support an assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, Local Rule 56(d) specifies that "[e]ach statement by the movant or opponent…, including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible."

Plaintiff's many submissions do not comply with these rules. As Plaintiff's opposition to each Defendant's motion suffers the same deficiencies, the Court will use Plaintiff's opposition to Midland's motion for summary judgment as an example. Because Plaintiff submitted only a reply to each Defendant's 56.1 statement of undisputed material facts, albeit with references to case law, and did not also submit a memorandum of law, the Court construes these replies as the sum of his opposition. *See* Dkt. Nos. 387-91.

First, Plaintiff starts by lodging so-called "general objections" focused on his claims that Midland's assertions are either not supported by a "properly verified and/or previously disclosed declaration of a qualified and competent declarant(s), based on 'personal knowledge'" or not supported by "previously disclosed, properly verified and authenticated documents," incorporating the arguments he makes in his motion to strike. Dkt. No. 389 at 1-2. As the Court explains below in its discussion of Plaintiff's motion to strike, his objections are unsupported by the facts and by the law. As such, Plaintiff's incorporation of his "general objections" in

response to each and every statement in Midland's 56.1 statement, does not create a genuine dispute, and to the extent Defendants' statements are *only* disputed by reference to "general objections," the Court will deem them undisputed. *See Velez v. SES Operating Corp.*, No. 07-CV-10946 (DLC), 2009 WL 3817461, at *1, n.1 (S.D.N.Y. Nov. 12, 2009) (defendant's statements deemed admitted where plaintiff's general objections did not cite to contrary admissible evidence in the record).

Second, Plaintiff frequently makes conclusory or vague objections without providing any citation to evidence. *See, e.g.*, Dkt. No. 389 at 2 (objecting to Defendant's statement as "False, statement was made pre-CRA discovery" without pointing to specific evidence in the record that refutes Defendant's statement). The Court will disregard statements in Plaintiff's responses that are vague, conclusory, inapposite, speculative, argumentative, unsupported, or otherwise inappropriate for consideration. *See Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 243 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (citing *Shortt v. Congregation KTI*, No. 10-CV-2237 (ER), 2013 WL 142010, at *1 n.2 (S.D.N.Y. Jan. 9, 2013) ("[I]n analyzing the instant motion, the Court has disregarded averments in Plaintiff's 56.1 Response that are...not supported by citations to admissible evidence in the record...or that are improper legal arguments.").

Third, when Plaintiff does direct the Court to specific evidence, with few exceptions he points to documents denoted by Bates numbers and not to exhibits that have actually been provided to the Court. *See, e.g.*, Dkt. No. 389 at 6-7, n.13, 16-20. Because they are not a part of the record in this case, and because the Court has no means of verifying Plaintiff's citations, the statements they are intended to support are, in fact, unsupported.

In sum, despite these various infirmities, and "acknowledging that the various procedural rules attendant to opposing summary judgment may be challenging or confusing for a *pro se* litigant," the Court has carefully reviewed Plaintiff's submissions and "done its best to separate the wheat from the chaff." *Cayemittes*, 974 F. Supp. 2d at 243 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.")). As the Second Circuit has noted, "[t]he purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz*, 258 F.3d at 74. Here Plaintiff has neither guided the Court nor provided the voluminous records. A plaintiff, even one proceeding *pro se*, cannot avoid summary judgment by simply relying "conclusory allegations or unsubstantiated speculation." *Posr v. Dolan*, No. 02-CV-0659 (LBS), 2003 WL 22203738, at *2 (S.D.N.Y. Sept. 23, 2003) (citation omitted).

## B. Undisputed Facts

Having establish the Court's approach to Plaintiff's submissions, the Court now sets forth those material facts reasonably deemed undisputed.

### 1. Anderson Financial Network

On April 22, 2013, DirecTV placed for collection by Anderson an account in the name of *Harry* Frederick, the brother of Plaintiff Ezekiel Frederick. Defendant Anderson Financial Network, Inc.'s Local Rule 56.1 Statement of Material Facts ("Anderson 56.1"), Dkt. No. 332, ¶¶ 1, 3. Anderson sent a collection notice to Harry Frederick, who has sworn that he is the "sole debtor responsible to [Anderson]" for the DirecTV account. Anderson 56.1 ¶¶ 2, 5. Plaintiff has

sworn that he is "not the debtor or responsible in any manner to [Anderson]" for the account. Anderson 56.1 ¶ 4.

Nonetheless, when Anderson received a letter on June 21, 2013 from Plaintiff wherein he referenced information having been "transmitted to [his] credit bureau," Anderson searched its records, confirmed it did not have an account related to Plaintiff, and submitted to all three credit reporting bureaus an Automated Universal Data (AUD) form requesting that the account number in Plaintiff's letter be deleted. Anderson 56.1 ¶¶ 6-8. Plaintiff has admitted that Anderson deleted the information with the respective credit bureaus. Anderson 56.1 ¶ 9. At no point did Anderson receive an investigation request from any of the credit reporting agencies ("CRAs"), and Plaintiff has provided no proof that he disputed the credit report entry directly with any CRA. Anderson 56.1 ¶¶ 10-11.

### 2. Midland Credit Management

There are three Midland accounts at issue in the case, each opened in the name *Harry Frederick*. Defendant Midland Credit Management Inc.'s Local Rule 56.1 Statement of Material Facts ("Midland 56.1"), Dkt. No. 358, ¶¶ 1-2. Plaintiff does not recall whether he submitted a dispute to any of the CRAs and does not have copies of any such disputes. Midland 56.1 ¶ 3. Nonetheless, around July 13, 2013, Midland received a notice of dispute from a CRA concerning one account. Midland 56.1 ¶ 4. Midland requested deletion of the subject trade-line around July 29, 2013. Midland 56.1 ¶ 5. When Midland received notices of disputes regarding the other accounts between June 2013 and January 2014, it again requested deletions of the subject trade-lines. Midland 56.1 ¶¶ 6-11. The allegedly incorrect information was removed from Plaintiff's account. Midland 56.1 ¶ 12.

Plaintiff alleges that he was denied a Discover card in 2014 due to "collections," but admits that the accounts on his credit report at the time of the alleged denial were not associated with Midland. Midland 56.1 ¶ 14. He also alleges that the only specific "credit denial" occurred in 2011, prior to Midland reporting on Plaintiff's accounts. Midland 56.1 ¶ 15. Plaintiff did not apply for any mortgages during the time any accounts associated with Midland appeared on his credit report. Midland 56.1 ¶ 16.

### 3. Pinnacle Credit Services / Tina Vincelli

On October 7, 2010, Plaintiff signed a contract with Verizon for mobile broadband service, but he never made a payment to Verizon and his final statement, dated March 13, 2011, reflects an amount due of $358.97. Statement of Relevant Material Facts ("Pinnacle 56.1"), Dkt. No. 339, ¶¶ 1-3. On or about October 23, 2013, Plaintiff mailed a check to Verizon in the amount of $12.50 stamped with the following instruction on the back of the check: "ENDORSEMENT BY YOU/AGENT CONSTITUTES AN IRREVOCABLE AGREEMENT FOR SETTLEMENT / SATISFACTION IN FULL. AUTHORIZATION FOR THE FILING OF A SATISFACTION AFFIDAVIT AND DIRECTION TO CREDIT BUREAU TO UPDATE FILE TO PAID AS AGREED." Pinnacle 56.1 ¶¶ 4-5. Plaintiff believed this would be sufficient to pay off his entire balance with Verizon, a gambit he attempted with at least half a dozen creditors. Pinnacle 56.1 ¶¶ 6-9.

At some point, Verizon began reporting Plaintiff's account to the CRAs. Pinnacle 56.1 ¶ 10. Between around June 18, 2013 and June 2, 2014, Plaintiff communicated with the CRAs concerning his Verizon account, asking them to "verify," "substantiate," or "audit" the reporting of his Verizon account, without specifying if or how the reporting was incorrect. Pinnacle 56.1

¶¶ 11-12. None of the communications references his attempt to satisfy his debt. Pinnacle 56.1 ¶ 12.

In February 2014, Verizon sold Plaintiff's account to Pinnacle, which began reporting his account to the CRAs around March 29, 2014. Pinnacle 56.1 ¶¶ 13-14. Between May and August 2014, Plaintiff mailed letters to Pinnacle requesting validation of his account and stating that there is a "probability" of error, but not specifying the basis for his dispute or mentioning the check. Pinnacle 56.1 ¶ 15. On June 18, 2014, Plaintiff filed an action in the Civil Court of the City of New York against Pinnacle. Pinnacle 56.1 ¶ 16. On July 24, 2014, Pinnacle requested that the CRAs delete Pinnacle's trade-line from Plaintiff's credit report. Pinnacle 56.1 ¶ 17.

Tina Vincelli is an attorney admitted in Minnesota who worked as an associate at SeilerSchindel, PLLC, at the time of the relevant events. Pinnacle 56.1 ¶ 18. She has never been an employee of Pinnacle, but did represent Pinnacle in various matters. Pinnacle 56.1 ¶¶ 19-20. Vincelli does not regularly collect or attempt to collect debts owed or asserted to be owed to others. Pinnacle 56.1 ¶ 22.

Pinnacle is a passive debt buyer, meaning that it purchases defaulted debt but does not collect on it; rather, it retains third party firms for the purpose of collection. Pinnacle 56.1 ¶ 23. Pinnacle's principal purpose is not the collection of debts nor does it regularly collect or attempt to collect debts owed to others. Pinnacle 56.1 ¶¶ 24-25.

### 4. I C System

Plaintiff had a mobile phone account with AT&T that was assigned to I C System for collection from April 2011 to April 2012. Local Rule 56.1 Statement of Material Facts ("I C System 56.1"), Dkt. No. 353, ¶¶ 1-2. I C System sent an initial demand letter and request for payment to Plaintiff on April 27, 2011. I C System 56.1 ¶ 3. On April 10, 2012, having had no

other communication with Plaintiff, I C System sent a second letter advising Plaintiff that his AT&T account was withdrawn from I C System, and that I C System requested the deletion of any information it may have provided to the CRAs. I C System 56.1 ¶¶ 4-5. At his deposition, Plaintiff testified that he first learned about credit reporting issues in either August or September or October of 2011. I C System 56.1 ¶ 9.

Plaintiff testified that at some time in 2011 or 2012, he sought to participate in a real estate transaction and collect over $30 million in rental income and was thwarted by negative information in his credit report. I C System 56.1 ¶¶ 10, 13. However, he also testified that he was unemployed between 2010 and 2013 and had no stream of income or savings. I C System 56.1 ¶¶ 11-12. Plaintiff acknowledges that he did not apply for any mortgages or lines of credit in 2011 or 2012. I C System 56.1 ¶ 15.

Plaintiff provided no documents in his possession, including the documents he received in response to subpoenas issued to the CRAs, that show any complaints he directed to I C System or to the CRAs about his account with I C System. I C System 56.1 ¶¶ 19-22, 24-25.

### 5. Capital One

Plaintiff opened an account with Capital One on June 24, 2007. Capital One Bank (USA), N.A.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Cap. 56.1"), Dkt. No. 345, ¶ 2. By April 2008, Plaintiff's billing statement showed that he had missed six payments. Cap. 56.1 ¶ 11. The account balance was charged-off as a loss to Capital One on May 20, 2008 but continued to accrue post-charge off interest. Cap. 56.1 ¶¶ 12-13. On or around October 4, 2011, Capital One received a check for $5 from Plaintiff with a stamp on the reverse side attempting to function as an accord and settlement. Cap. 56.1 ¶¶ 17-21. On or around April 21, 2012, Capital One received a similar check for $10. Cap. 56.1 ¶¶ 22-25.

Capital One receives disputes from CRAs via Automated Consumer Dispute Verification ("ACDV") forms. Cap. 56.1 ¶ 28. An ACDV contains a description of the consumer's dispute and the data currently being reported by the CRAs. Cap. 56.1 ¶ 29. In the context of a general dispute, Capital One will compare its internal data with the data currently being reported by the CRA, confirm the data as accurate, revise any inaccuracies, and report its results back to the CRA. *Id.*

Between June 2013 and April 2014, Capital One responded to six ACDVs submitted by CRAs in connection with Plaintiff's account. Cap. 56.1 ¶ 30. In each instance where Capital One found a discrepancy, Capital One instructed the CRA that its reporting information should be modified. Cap. 56.1 ¶ 33. On June 6, 2014, Capital One received a seventh ACDV and instructed the CRA to delete the trade line associated with Plaintiff's account. Cap. 56.1 ¶ 34.

Plaintiff claims that Capital One's alleged failure to conduct a reasonable investigation prevented him from entering into contractual obligations with respect to the development of housing projects during 2011 and 2012. Cap. 56.1 ¶ 49. However, Plaintiff never submitted his name in connection with any mortgage applications. Cap. 56.1 ¶ 51. Plaintiff has not worked in the last ten years. Cap. 56.1 ¶ 45. Plaintiff claims damages totaling over $30 million from lost rental income and lost mortgage credits anticipated in connection with the rental properties. Cap. 56.1 ¶¶ 59-60. Plaintiff also claims additional damages from three denials of credit he attributes to Capital One's reporting. Cap. 56.1 ¶ 61. Plaintiff produced a letter from Discovery Bank in regard to a denial of application Plaintiff made for a credit card, but this purported denial of credit was issued over a month after Capital One had stopped reporting on Plaintiff's trade-line. Cap. 56.1 ¶¶ 62, 64. Plaintiff failed to produce any document showing any of his alleged denials of credit were caused by Capital One's reporting. Cap. 56.1 ¶ 65.

## II. Defendants' Motions for Summary Judgment

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (quotation and alteration omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that it is entitled to relief as a matter of law. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence...on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

As a *pro se* litigant, Plaintiff is afforded "special solicitude" under Second Circuit law. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). A *pro se* plaintiff is entitled to have his submissions held to "less stringent standards than formal pleadings drafted by lawyers."

11

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1971). They must be read liberally and interpreted to

"raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

1994), however the plaintiff's *pro se* status does not relieve him of the usual requirements of

summary judgment, specifically the obligation that he come forward with evidence

demonstrating a genuine dispute regarding material fact. *See Carey v. Crescenzi*, 923 F.2d 18, 21

(2d Cir. 1991); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 467 (S.D.N.Y. 1998). Plaintiff was

served by each Defendant with the notice required by Local Rule 56.2, informing him of the

nature of a summary judgment motion and the manner in which it could be opposed, and

warning that failure to respond may lead the court to accept defendants' factual assertions as

true. Dkt. Nos. 333, 340, 343, 352, & 356.

## B. Analysis

### 1. Fair Credit Reporting Act (FCRA)

The FCRA, which "regulates credit reporting procedures to ensure the confidentiality,

accuracy, relevancy, and proper utilization of consumers' information," achieves its aims in part

by imposing "several duties on those who furnish information to consumer reporting agencies."

*Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681s-

2).

Section 1681s-2(b) specifically imposes certain procedural obligations on furnishers

"[a]fter receiving notice ... of a dispute with regard to the completeness or accuracy of any

information ...[from] a consumer reporting agency." § 1681s-2(b)(1). After receiving notice, a

furnisher shall: (1) "conduct an investigation with respect to the disputed information;" (2)

"review all relevant information provided by the consumer reporting agency...;" (3) "report the

results of the investigation to the consumer reporting agency;" (4) where an "investigation finds

that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information...;" and (5) where the information is found to be inaccurate, incomplete, or unverifiable, promptly modify, delete, or permanently block the reporting of that information. 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E).

Although the Second Circuit has not directly addressed the issue, the majority of courts to address whether a private right of action exists under § 1681s-2(b) have recognized one. *See Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) (collecting cases). In order to state a claim under § 1681s-2(b), a plaintiff must show that the defendant is a "furnisher of information" within the meaning of the statute, that "the furnisher of information received notice of the consumer dispute from a [CRA]," and that the furnisher acted in "willful or negligent noncompliance" with the statute. *Neblett v. Chase Bank*, No. 09-CV-10574 (DAB)(GWG), 2010 WL 3766762, at *5 (S.D.N.Y. Sept. 27, 2010); *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475 (DLC), 2002 WL 31106934, at *5 (S.D.N.Y. Sept. 20, 2002). Only if a furnisher of information received notice of a dispute from the CRA, rather than solely from the consumer directly, does a private right of action exist. *See Neblett*, 2010 WL 3766762, at *5; *Fashakin v. Nextel Commc'ns*, No. 05-CV-3080 (SLT), 2006 WL 1875341, at *5 (E.D.N.Y. July 5, 2006).

Even though the specific provision at issue here does not specify what type of investigation must take place, and the Second Circuit has yet to determine the governing standard, other circuit and district courts have assumed that it must be "reasonable." *See, e.g., SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir.

2004); *Jenkins v. Capital One, N.A.*, No. 14-CV-5683 (SJF), 2017 WL 1323812, at \*5 (E.D.N.Y. Feb. 28, 2017); *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010). The FRCA was enacted "to require that [CRAs] adopt reasonable procedures for meeting the needs of commerce for consumer credit...in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681(b). Accordingly, one of the core ways in which a plaintiff may establish "willful or negligent noncompliance" with the statute, is to show that the furnisher failed to *reasonably* investigate the plaintiff's dispute. *See Amendoeira v. Monogram Credit Card Bank of Georgia*, No. 05-CV-4588, 2007 WL 2325080, at \*1 (E.D.N.Y. Aug. 7, 2007); *accord Okocha*, 700 F. Supp. 2d at 374. What constitutes "reasonableness" is viewed "in light of what [the furnisher] learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157.

Finally, even if the Court were to find that one or more Defendants violated § 1681s-2(b), "summary judgment is still appropriate if no reasonable factfinder could find that Plaintiff is entitled to damages under the FCRA." *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005). First, while it may be self-evident, if Plaintiff cannot show that any of the information was inaccurate, there is no harm. *See, e.g., Mortimer v. Bank of Am., N.A.*, No. 12-CV-1959 (JCS), 2013 WL 57856, at \*8-9 (N.D. Cal. Jan. 3, 2013) (finding that plaintiff's FCRA claim fails because defendant reported accurate information). Second, assuming the information was inaccurate, to recover actual damages a plaintiff must establish a "causal relationship between the violation of the statute and the loss of credit or other harm." *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008) (internal quotations and citation omitted).

The Defendants make several arguments in favor of their respective motions for summary judgment. The Court addresses three of the core arguments, each of which is sufficient to warrant summary judgment for some or all Defendants.

### a) Plaintiff Fails to Establish That He Submitted Any Disputes with a CRA Regarding Defendants I C System and Anderson

As stated above, to state a valid claim against a furnisher under § 1681s-2(b), Plaintiff must show that he disputed the information with a CRA directly that, in turn, notified the furnisher of the dispute. *See, e.g., Kane v. Gaur. Residential Lending*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *4-5 (E.D.N.Y. May 16, 2005); *Redhead*, 2002 WL 31106934, at *5.

Defendant I C System includes in its statement of undisputed material facts that Plaintiff concedes that he has no documents in his possession evidencing that he had ever filed any complaints with any credit reporting bureau relating to his account serviced by I C System. *See* I C System 56.1 ¶¶ 19, 20, 21, 25 (citing Declaration of Concepcion A. Montoya, Ex. A, at 528:19-23, 532:6-24, 557:2-14; Ex. F). In opposing this motion, Plaintiff only lodges his so-called "general objections" against these statements – which, as explained above, are insufficient – plus an unsupported claim that the Experian report contains an I C System entry. Dkt. No. 390 at 5-6. As a result, since it is undisputed that Plaintiff has presented no evidence to suggest that he lodged a complaint with a CRA about I C System in particular, I C System's duty to investigate any claims concerning its reporting on Plaintiff's account was never triggered, and Plaintiff fails to establish his FCRA claim. The Court grants summary judgment to I C System on Plaintiff's FCRA claim.

Similarly, Anderson notes that Plaintiff never lodged a dispute with a CRA regarding an item on his credit report related to Anderson, thus vitiating any duty it had to investigate. *See* Memorandum of Law in Support of Anderson's Motion for Summary Judgment ("Anderson

15

Mem."), Dkt. No. 329, at 7-8. Anderson asserts that they did not receive an investigation request from any CRA. Anderson 56.1 ¶ 10. Despite his lengthy objection to Anderson's statement of facts, at no point does Plaintiff point to evidence suggesting that Anderson's contentions – that it never received a request from a CRA but nevertheless contacted the CRAs to delete the account number in Plaintiff's letter to Anderson "in order to placate Mr. Frederick's concern," *see* Declaration of Alicia McKeighan, Dkt. No. 331, ¶¶ 11-12 – were subject to genuine dispute. *See generally* Dkt. No. 387 at 2-10. Accordingly, if Anderson never received a request to investigate from a CRA, its duty to investigate was never triggered and Plaintiff's FCRA claim against Anderson fails as a matter of law. *Kane*, 2005 WL 1153623, at *5.

### b) Plaintiff Fails to Establish That Midland and Capital One Failed to Conduct Reasonable Investigations

Defendants Midland and Capital One make the argument that Plaintiff has failed to establish that their investigations of his dispute were not reasonable.

Midland argues that undisputed evidence shows that it conducted a reasonable investigation of each of the disputed accounts and promptly requested their removal from Plaintiff's credit report. Memorandum of Law in Support of Midland's Motion for Summary Judgment ("Midland Mem."), Dkt. No. 357, at 9-10 (citing Midland 56.1 ¶¶ 4-11). Specifically, Midland claims that it received notice of a dispute from a CRA concerning one account on July 13, 2013 and requested deletion of the subject trade-line on July 29, 2013. Midland 56.1 ¶¶ 4-5. On June 13, 2013 and July 4, 2013, Midland received notice of a dispute from a CRA concerning a second account; Midland requested deletion of the subject trade-line by August 19, 2013. Midland 56.1 ¶¶ 6, 8.

In additional to his "general objections," which, as stated above, are insufficient to raise a genuine issue here, Plaintiff makes a number of conclusory and unsupported arguments about the

unreasonableness and cursory nature of Midland's investigation. *See* Dkt. No. 389 at 5-11. First, Plaintiff argues that Midland acted unreasonably in relying on computer data instead of reviewing the underlying documents. Dkt. 389 at 4-5, 8. But even assuming this is true, Midland *did* request deletion of the trade-lines based on this investigation, unlike the defendant in *Johnson v. MBNA Am. Bank, N.A.*, the case upon which Plaintiff relies. *See id.* at 4 n.5 (citing 357 F.3d 426 (4th Cir. 2004)). Plaintiff offers no reason to believe that Midland's investigation was inadequate in this regard. Second, Plaintiff argues that letters providing additional information about his disputes "triggered the requirement for Defendants to implement additional investigative procedures or inquiries." *Id.* at 8. Plaintiff does not specify what these would be, nor does he offer any basis in the FCRA or case law for this unspecified obligation. "[A]lthough 'reasonableness' is generally a question for a finder of fact, summary judgment in this case [is] appropriate." *Gorman*, 584 F.3d at 1161. Thus, because no reasonable factfinder could conclude that Plaintiff can establish that Midland did not reasonably investigate his disputes, his FCRA claim fails as a matter of law. [3]

Capital One makes a similar, and similarly meritorious, argument about Plaintiff's failure to show its investigations were not reasonable. Memorandum of Law in Support of Capital One's Motion for Summary Judgment ("Cap. Mem."), Dkt. No. 344, at 13-16. Per the undisputed facts, between June 2013 and April 2014, Capital One responded to six ACDV requests submitted by CRAs in connection with Plaintiff's account. Cap. 56.1 ¶ 30. When responding to an ACDV, if there is a general dispute without any specific information, Capital One will compare its internal data with the data reported by the CRA, revise any inaccuracies as

_____

[3] Plaintiff also references two additional disputed accounts beyond those Midland discusses in its submissions, *see* Dkt. No. 389 at 2, 6, but Plaintiff only makes allegations with respect to three accounts in the operative Second Amended Complaint, *see* Second Amended Complaint, Dkt. No. 22, ¶ 60, and cites no documentary evidence to support his claims with respect to these additional accounts.

necessary, and report its results back to the CRA. Cap. 56.1 ¶ 29. In each instance in which Capital One had different information in its account from that submitted by the CRA, Capital One instructed the CRA to modify its reporting information in accordance with the account information provided by Capital One. Cap. 56.1 ¶ 33. Upon receiving a seventh ACDV on June 6, 2014, Capital One requested that the CRA delete the trade-line associated with Plaintiff's account three days later. Cap. 56.1 ¶ 34.

Assuming *arguendo* that Capital One had reported inaccurate information, Capital One argues that by confirming that the information within its files was consistent with what the CRA reported in the ACDV, its investigation was reasonable as a matter of law. Cap. Mem. at 14 (citing *Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 WL 1241531, at *17 (S.D.N.Y. Mar. 28, 2016) (holding that defendants met their obligation under § 1681s-2(b) when they confirmed the facts in the ACDV) and *Llewelyn v. Asset Acceptance, LLC*, No. 14-CV-411 (NSR), 2015 WL 6503893, at *8 (S.D.N.Y. Oct. 26, 2015) (holding defendant's investigation reasonable for reviewing all its records and those provided to it in order to confirm the reported information matched its internal records), *aff'd* 669 F. App'x 66 (2d Cir. 2016)).

To the best of this Court's ability to comprehend Plaintiff's arguments in response, he appears to make four core arguments in response to Capital One's factual assertions. First, Plaintiff asserts that he never applied to be a credit cardholder in the first instance and so is not responsible for any related debt. *See* Dkt. No. 391 at 2-3. As Capital One notes, this argument, to the extent it has any merit, cannot be raised for the first time in opposition to summary judgment. Capital One Bank (USA), N.A.'s Reply Memorandum of Law in Support of Its Motion for Summary Judgment ("Cap. Reply"), Dkt. No. 397, at 3 (citing *Wright v. Jewish Child Care Ass'n of N.Y.*, 68 F. Supp. 3d 520, 529 (S.D.N.Y. 2014)). Second, Plaintiff suggests that

18

there were more ACDV disputes than are accounted for by Capital One in its explanation of its investigations. *See* Dkt. No. 391 at 8. Plaintiff lists various Bates numbers in the footnotes, but the Court has no way of verifying his assertion. Capital One does concede that there were thirteen ACDVs, but notes that six of the thirteen fall outside the two-year statute of limitations as provided for in § 1681p. Cap. Reply at 4-6. Plaintiff references a "continuing violation theory" in support of his argument that these disputes were not time-barred, but fails to offer any authorities supporting this tolling theory. *See* Dkt. No. 391 at 10. Third, Plaintiff argues that two checks he sent, for $5 and $10 respectively, as part of an attempt to achieve accord and satisfaction, were not included in the credit report updates, but he offers no citation to evidence that would create a genuine dispute of material fact. *Id.* at 9. Fourth and finally, Plaintiff repeats many of the exact same arguments he made with respect to Midland. *See id.* at 10-24. Nothing in the record suggests that these arguments should prevail against Capital One having been rejected above.

In sum, because Plaintiff fails to point to any specific dispute mentioned within the ACDV that would have triggered some obligation to conduct a more thorough investigation than that which Capital One conducted, his claim fails as a matter of law. *See Jenkins v. LVNV Funding, LLC*, No. 14-CV-5682 (SJF), 2017 WL 1323800, at *11-12 (E.D.N.Y. Feb. 28, 2017); *Ritchie*, 2016 WL 1241531, at *17; *Llewellyn*, 2015 WL 6503893, at *8.

### c) Plaintiff Fails to Show Willfulness or Plausible Actual Damages

All five Defendants are entitled to summary judgment because "no reasonable factfinder could find that Plaintiff is entitled to damages under the FCRA." *Jenkins v. AmeriCredit Fin. Servs., Inc.*, No. 14-CV-5687 (SFJ), 2017 WL 1325369, at *7 (E.D.N.Y. Feb. 14, 2017) (quoting *Trikas*, 351 F. Supp. 2d at 44). To prevail on a claim under the FCRA, the plaintiff "must prove

that inaccurate information in a credit report caused him harm." *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996).

Under § 1681n, a Defendant who *willfully* violates the FCRA is liable for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," punitive damages, and attorneys' fees.[4] 15 U.S.C. § 1681n(a); *see also Ritchie*, 14 F. Supp. 3d at 239 ("[A] plaintiff may recover actual, statutory, and punitive damages for a willful violation of the FCRA..."). By contrast, pursuant to § 1681o, *negligent* violations of the FCRA entitle a plaintiff to collect actual damages, but not punitive damages. *See* 15 U.S.C. § 1681o; *Trikas*, 351 F. Supp. 2d at 45.

Plaintiff "bear[s] the burden of demonstrating the existence of a material factual dispute as to the existence of damages." *Burns*, 655 F. Supp. 2d at 250 (internal quotation marks and citation omitted). Plaintiff has not provided sufficient evidence that any FCRA violation was willful, precluding the recovery of punitive damages, and cannot plausibly show that he has suffered actual damages. The Court addresses these deficiencies in turn.

### i) Plaintiff Cannot Establish a Willful Violation

To establish a willful violation of the FCRA, the plaintiff "must show that a defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Northrop v. Hoffman of Simsbury, Inc.*, 12 F. App'x 44, 50 (2d Cir. 2001) (internal quotation marks and citation omitted). Willfulness is established where the defendant "intentionally misled consumers or concealed information from them." *George v. Equifax Mortg. Servs.*, No. 06-CV-971 (DLI), 2010 WL 3937308, at *2 (E.D.N.Y.

---

[4] Of course, as Plaintiff here proceeds *pro se*, he is not entitled to attorney's fees. *See Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 694-95 (2d Cir. 1998).

Oct. 5, 2010) (internal quotation marks and citation omitted). "[T]he mere failure to correct a plaintiff's inaccurate credit information, even after notification of the inaccuracy does *not* constitute a willful failure to comply with the FCRA." *Id.* (emphasis in original).

At various points in his opposition to summary judgment, Plaintiff alleges that the Defendants are responsible for "fraudulent concealment," and "intentionally committed acts in conscious disregard for Plaintiff's rights" by knowingly re-reporting the "patently false" accountholder information as Herman E. Frederick with a billing address in Tobyhanna, PA. *See* Dkt. No. 389 at 6-7; *see also* Dkt. No. 391 at 23 (alleging that Capital One "fraudulently altered" the ACDVs to conceal the substance of Plaintiff's disputes); Dkt. No. 388 at 19 (alleging that Pinnacle had a "deceptive scheme").

Nonetheless, even assuming that each Defendant violated the FCRA, Plaintiff fails to provide evidence beyond his own hyperbole that any Defendant intentionally failed to correct information it knew to be false. To the contrary, it is undisputed that Anderson, Capital One, and Midland deleted the disputed information from his credit report. *See* Anderson Mem. at 9-10 (citing Declaration of Aaron R. Easley, Dkt. No. 330, Ex. A at 63:14-16); Cap. 56.1 ¶ 34; Midland 56.1 ¶ 12. And beyond Plaintiff's conclusory statements, he furnishes no evidence that any of the Defendants either intentionally misled him or acted in reckless disregard. While Plaintiff argues that his opposition demonstrates a genuine issue of material fact, as the Second Circuit has stated: "The summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Plaintiff does not carry his burden to establish willfulness as a matter of law, and is not entitled to recover statutory or punitive damages pursuant to § 1681n.

### ii) Plaintiff Cannot Establish Actual Damages

Assuming that any of the Defendants had committed an FCRA violation, Plaintiff's claims also fail as a matter of law because he is unable to establish actual damages. *See Spector v. Experian Info. Servs. Inc.*, 321 F. Supp. 2d 348, 356 (D. Conn. 2004) ("In order to survive a summary judgment motion on a claim of negligent violation of the FCRA, a plaintiff must provide some evidence from which a reasonable fact-finder could conclude that [he] suffered actual damages as a result of defendant's actions."). To recover actual damages a plaintiff must establish a "causal relationship between the violation of the statute and the loss of credit or other harm." *Burns*, 655 F. Supp. 2d at 250. That is, Plaintiff "must establish actual damages attributable to defendants' unreasonable investigation," *Okocha v. HSBC Bank USA, N.A.*, No. 08-CV-8650 (MHP), 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010), any "any harm must be traceable to the inaccurate, FCRA-violating information – not just to the report that contained that information or to accurate data within the same report." *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693 (PAE), 2016 WL 3538379, at *23 (S.D.N.Y. June 22, 2016).

Actual damages under the FCRA "may include a denial of credit, as well as 'humiliation and mental distress, even in the absence of out-of-pocket expenses....'" *Jenkins v. Chase Bank USA, N.A.*, No. 14-CV-5685 (SJF), 2015 WL 4988103, at *8 (E.D.N.Y. Aug. 19, 2015) (quoting *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995)). A plaintiff claiming actual damages in the form of emotion distress "must demonstrate [that he] suffered an 'actual injury'" and "generally cannot stand on [his] subjective testimony alone, but must set forth 'other evidence that such an injury occurred.'" *Caltabiano v. BSB Bank & Tr. Co.*, 387 F. Supp. 2d 135, 142 (E.D.N.Y. 2005) (quoting *Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*, 310 F.3d 43, 44 (2d Cir. 2002)).

At various places in his Second Amended Complaint, Plaintiff lodges general allegations that inaccuracies in his credit reports caused him "to default on a mortgage contingent contract" on a property in Brooklyn, to fail to qualify for a mortgage and "repeated consumer credit denials," to prevent his "professional appointment by an insurance carrier to sell life insurance and annuities," and caused his creditors to "either raise the rate of interest charged, reduce lines of credit, close credit card accounts, [or] deny new extensions of credit." Second Amended Complaint, Dkt. No. 22, ¶¶ 48, 55, 57, 61, 63. Now, after the close of discovery, Plaintiff has failed to substantiate his claim that any of these alleged injuries occurred because of Defendants' actions.

For example, Plaintiff testified that he never pursued any opportunities in the time period during which Midland appeared in his credit report. Midland 56.1 ¶ 16; *see also* Dkt. No. 397 at 10 (demonstrating that Plaintiff's alleged damages predate Capital One's ACDV responses); *Cadet v. Equifax Credit Servs.*, No. 05-CV-4843 (SLT), 2008 WL 189873, at *7 (E.D.N.Y. Jan. 18, 2008) (holding that the plaintiff failed to establish actual damages where credit denials did not occur between the date the CRA was informed of an inaccuracy and the date on which the CRA updated its records). Plaintiff also testified that he never submitted any loan applications, explaining, "why would I go on the mortgage application knowing that I was going to get denied because I did not meet the criteria?" Cap. Mem. at 19. He claims that he lost out on the opportunity to collect over $30 million dollars in rental income, but never applied for was never denied a mortgage, and has been unemployed since 2000. Memorandum of Law in Support of I C System's Motion for Summary Judgment, Dkt. No. 351, at 14. Plaintiff does offer a purported 2014 letter from Discovery Bank in regards to a denial of a credit card application, but he offers no evidence connecting that denial to any of the alleged inaccuracies. *See* Cap. Mem. at 21.

23

Ultimately, Plaintiff's reliance on "lost opportunities" is too speculative. *See Casella*, 56 F.3d at 475. As there is no evidence that Plaintiff was denied credit or opportunities as a result of Defendants' failures to conduct reasonable investigations or report alleged inaccuracies, he fails to establish he suffered actual damages. *See Wenning*, 2016 WL 3538379, at *23; *Okocha*, 2010 WL 5122614, at *6.

Plaintiff alternatively attempts to establish actual damages in the form of emotion distress, attaching a doctor's note as part of his "supplemental declaration." *See* Dkt. No. 392. The document does not establish a causal connection and merely states that Plaintiff was under the care of a physician. *See Caltabiano*, 387 F. Supp. 2d at 142 (holding that the plaintiff failed to establish actual damages where he did not "provide[ ] any psychiatric or medical records to support that he has suffered emotional damages as a result of the Defendants' actions"). Plaintiff's own testimony of humiliation and emotional distress "is insufficient to create a triable issue of fact as to the existence and amount of any alleged damages." *See Burns*, 655 F. Supp. 2d at 258, n.15.

As a result of Plaintiff's failure to establish damages as a matter of law, the Court grants summary judgment to all Defendants.

### 2. Fair Debt Collection Practices Act (FDCPA)

As the Court previously noted, the FDCPA governs only debt collectors; "creditors are not subject to the FDCPA." MTD Order at *5 (quoting *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998)). The FDCPA defines a "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Pinnacle claims that it does not meet this definition because it is a passive debt buyer, purchasing defaulted debt but taking no direct action to collect on it. Dkt. No. 335 at 17 (citing Declaration of Robert Castle, Dkt. No. 336, ¶ 8). Pinnacle retains third party firms for the purpose of collection. *Id.* Rather, Pinnacle asserts that it is a creditor, because it purchased defaulted debt for its own purposes, and is "to whom a debt is owed," as stated in § 1692a(4). The Supreme Court recently affirmed that debt buyers are not debt collectors. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721-22 (2017).

Plaintiff disputes Pinnacle's self-characterization, but offers no legal support for his dispute. Dkt. No. 388 at 23. He also asserts that Pinnacle waived this argument by not raising it during its motion to dismiss, *id.*, but offers no legal basis for this assertion.

Ultimately, "[i]n order to sustain a claim under the FDCPA, [plaintiff] must plead facts showing that [defendant] is either a debt collector or a creditor that attempted to collect on its debts by using a false name." *Briggs v. Wells Fargo Bank, N.A.*, No. 14-CV-1759 (RRM), 2015 WL 1014184, at *5 (E.D.N.Y. Mar. 6, 2015). Plaintiff has failed to do so, and Pinnacle is entitled to summary judgment as a matter of law.[5]

### III. Plaintiff's Motions

#### A. Plaintiff's Motions to Strike

On September 13, 2017, Plaintiff filed five documents – one for each Defendant – styled as declarations in support of a motion to "strike/preclude undisclosed witnesses, unverified declarations, as well as, undisclosed and unverified documents, deposition testimony, answers and affirmative defenses, pursuant to Rule 26(a), (c)(1), (e), Rule 26(g)(1) and (g)(3), Rule

---

[5] Defendant Tina Vincelli, formerly an associate of Pinnacle's outside counsel and not an employee of Pinnacle, also does not count as a debt collector under the FDCPA because her principal business does not involve the collection of debts. Vincelli is also entitled to summary judgment.

37(c)(1) and (d)(1), as well as, Rule 11(a), Rule 12(f), and Rule 56(c)(4), and to "strike/preclude documents pursuant to Rule 803(6), 807, Rule 901, Rule 1002 and Rule 1006." Dkt. No. 372 (with respect to Capital One); *see also* Dkt. No. 373 (same with respect to Midland); Dkt. No. 374 (same with respect to Anderson); Dkt. No. 375 (same with respect to I C System); Dkt. No. 376 (same with respect to Pinnacle/Vincelli). Essentially, Plaintiff's argument is that the Defendants' various declarants cannot properly "lay the foundation for the admission of hearsay documents," *see, e.g.*, Dkt. No. 373 at 2, that their verifications fail to meet the "personal knowledge" requirements in the Federal Rules, *id.*, that the declarations are impermissible because the declarants were not "previously disclosed/identified by name," *id.* at 3, or that deposition transcripts attached as exhibits to the declarations were not authenticated. *See id.* at 4. In each case, Plaintiff's objections are unfounded.

To begin with, as Defendants note, Rule 12(f) only allows the Court to strike pleadings, not materials submitted in connection with a motion. *See Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 334-35 (S.D.N.Y. 2008). Nonetheless, because Plaintiff proceeds *pro se*, the Court will construe his motion as part of his opposition to summary judgment and consider his arguments.

The Court need not dwell on the specifics of each of Plaintiff's numerous objections; upon review, all Defendants submitted declarations that comport with the standard set by 28 U.S.C. § 1746(a) and Federal Rule of Civil Procedure 56(c)(4). Each declarant executed their declaration under penalty of perjury. Each declarant states that he or she has personal knowledge of the submitted business records. And each declarant was either previously disclosed or cannot credibly be said to present the specter of "sandbagging" Plaintiff such that his or her testimony would be precluded under Rule 37(c). In short, for the reasons stated in Defendants' memoranda

of law, Plaintiff's arguments fail. *See* Dkt. No. 378 at 4-10 (Capital One); Dkt. No. 407 at 2-4 (Midland); Dkt. No. 405 at 2-5 (Pinnacle/Vincelli); Dkt. No. 395 at 2-3 (Anderson); Dkt. No. 394 at 2-3 (I C System).

### B. Plaintiff's Motion for Summary Judgment

Upon the Court's review of Plaintiff's motion for summary judgment, *see* Dkt. No. 365, the Court can find no relevant argument Plaintiff makes that was not also asserted in opposition to Defendants' motions for summary judgment. Consequently, for many of the same reasons stated above for why the Defendants *are* entitled to summary judgment, Plaintiff is not.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS summary judgment to all Defendants and DENIES summary judgment to the Plaintiff. The Court also DENIES Plaintiff's motion to strike or preclude. The Clerk of Court is respectfully directed to close the case and enter judgment. A copy of this Order will be mailed to the *pro se* Plaintiff by Chambers.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: March _____, 2018
     New York, New York

ALISON J. NATHAN
United States District Judge

27